FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 14 2020 ★ CV 20 - 815

BROOKLYN OFFICE

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

CHEN, J.

JOHANNA MARIA VIBE ENER

BLOOM, M.J.

      Plaintiff,

  -against-.

                                **Complaint for a Civil Case**

KORANGY PUBLISHING, INC.
D/B/A /THE REAL DEAL
450 West 31st Street
4th Floor
New York, New York, 10001

                                Case No. _____

And

DAVID A. DUCKENFIELD,
an individual,
c/o Balsera Communications
Group
2199 Ponce De Leon Blvd. Suite 200
Coral Gables, Fl 33134

And

BALSERA COMMUNICATIONS
GROUP
2199 Ponce De Leon Blvd.
Suite 200
Coral Gables, Fl 33134

          Defendants.



Plaintiff, Johanna Maria Vibe Ener, (the "Plaintiff") or ("Vibe Ener") sues the Defendants

Korangy Publishing, Inc., d/b/a The Real Deal ("TRD"), David A. Duckenfield ("Duckenfield"),

and Balsera Communications Group ("Balsera"), collectively hereinafter referred to as (the

"Defendants"), acting in concert, jointly and severally, in this civil action for Defamation Per Se

(libel and slander) and Intentional Infliction of Emotional Distress. Defendants actions caused

actual damages, compensatory damages, and have given rise to punitive damages as well, including continuing and aggravated harm to the Plaintiff's personal and professional reputation, and livelihood. As grounds therefore, Plaintiff alleges as follows:

### I.     THE PARTIES

1.     Plaintiff Vibe Ener is a natural person, a private individual, and currently residing in the United Kingdom. Plaintiff has not sought or held any public office or a government position, nor has she sought any form of publicity, public notice or prominence outside of her own private affairs or transactions. Plaintiff Vibe Ener thus is not a public figure based on fact.

2.     David A. Duckenfield is a natural person who resides in Florida and is the president and partner of Balsera Communications Group.

3.     Balsera Communications Group is a communications firm with its principal office situated in Miami-Dade county, Florida.

4.     Korangy Publishing, Inc., d/b/a The Real Deal is a domestic business corporation formed and operating under the laws of the State of New York, and is a resident of this District and who may be served with process at its office in Kings County, or the office of Korangy Publishing Inc. at its registered agent located in Garden City, New York.

### II.     JURISDICTION

5.     Vibe Ener, TRD, Duckenfield, and Balsera are citizens of different states and the matter in controversy between them exceeds the sum or value of $75,000.00, exclusive of interests and costs.

6.     Vibe Ener's damages greatly exceed the statutory minimum of $75,000.00 required to obtain jurisdiction in this matter, which amount does not represent the full value of the damages suffered by Vibe Ener.

7.     Vibe Ener alleges on information and belief that each of the Defendants was the agent of

each of the other, and committed the acts or omissions alleged herein on behalf of each of the other

defendants and, at all times relevant herein, acted within the course and scope of such agency or

employment.

8.    All of the allegations of this Complaint refer or relate to the tortious conduct of each and

every named Defendant, who acted individually and in concert, jointly and severally, to severely

damage Plaintiff Vibe Ener's reputation.

9.    This Court has jurisdiction of this civil action pursuant to 28 U.S.C. §1332(a)(1).

10.    Vibe Ener suffered injuries alleged herein in the State of New York, as well as in

Florida, and on an international basis.

### III.    FACTUAL BACKGROUND

**A. Vibe Ener Is A Private Figure**

11.    Vibe Ener is a resident in the United Kngdom.  She is not in public office,  nor in the

public spotlight and is not involved in a matter of public controversy.

12.    Vibe Ener started her career as a model and beauty pageant participant in Finland and

Italy and later traveled to New York where she met and became engaged to Pedro Martin, hereinafter

("Martin") , the CEO and founder of The Terra Group, a multi-billion-dollar real estate development

empire in Miami, Florida.  After meeting, Martin invited Vibe Ener to move to the United States from

Finland. In addition to promising Vibe Ener a future including marriage and having children together,

he retained an immigration attorney and paid for Vibe Ener to obtain an investor's visa to immigrate

permanently to the United States. Even more, Martin arranged for the immigration of Vibe Ener's

then ten-year old son and her mother. Martin also purchased three different residential properties for

Vibe Ener which were each over several million dollars.

13.     Vibe Ener gave up her life in Europe to start a new life with fiancé Martin. However, soon after her permanent relocation, Vibe Ener learned that Martin was married with adult children. However, Martin claimed that he was separated from his Wife, and the divorce was pending. Vibe Ener naturally believed Martin considering the amount of time and energy he invested in her, and the money he spent to immigrate her, her son and her mother to America. However, when Martin's wife and family discovered that Martin was engaged to another woman and had a new-born baby on the way, the situation became very volatile.

14.     Vibe Ener became pregnant with their first child in the summer of 2010, and then again in the summer of 2012. Vibe Ener and Martin also agreed to have a third child and started fertility treatments in 2016. While pregnant, Vibe Ener began to receive death threats and harassment from unknown third parties. Martin was very concerned and conveyed to Vibe Ener that his wife and family were extremely angry about Martin's infidelity and wanted it to end. It was at this point that Martin and others, including his lawyers, and unknown third-party agents began aggressively attacking Vibe Ener's good reputation, her role as a mother, a woman and respectable member of the community. The next thing she knew, her name was being slung around in New papers and media publications including that of The Real Deal.

15.     As a multi-billion-dollar entrepreneur and real estate mogul, Martin and The Terra Group provided a substantial amount of newsworthy local real estate news in and around Miami. The Terra Group and its founders, including Martin and his son were often featured in the TRD's Newspapers, blogs and online media sites.

16.     The Real Deal, is a media company that manages, operates and/or publishes a daily newspaper and digital news site. The media outlet focuses a portion of its operation on Real Estate news in New York City, South Florida and Los Angeles. The news outlet was started in 2003 and focuses on both commercial and residential real estate. The online and print publication was self-proclaimed "the must-read news source for real estate news," in a profile in the

4

Los Angeles Times in 2009,[1] and "the hot sheet for NYC real estate professionals," by the New York Post.

17.     Defendant Balsera Communications Group is a national public affairs and strategic communications firm providing media relations, digital strategy and issue advocacy campaigns to top-tier individuals, organizations and companies.

18.     Defendant David A. Duckenfield, is the president and partner of Defendant Balsera and was hired by Martin to be his spokesperson and to make statements on his behalf to TRD.

19.     Defendants and Martin are well acquainted with one another and established a mutually beneficial relationship promoting each other's financial interests.

20.     Defendants and Martin formed a secret agreement to harm Vibe Ener for each of their own interests, by planning and effectuating a deliberate strategy to publicly assassinate her character thereby damaging her personal and business reputations.

21.     Defendants disseminated false and defamatory publications, as well as private confidential personal information to the public about Plaintiff, a private figure,  which was used by the Defendants for an increase in business, traffic to articles, online site and accompanying online advertisements, and corresponding revenue, and by Martin for the purpose of preserving his business and personal reputation.

**B.     Defendant TRD Published the False and Defamatory Article Referring To Vibe Ener As A Former Mistress, And falsely Portraying her As A Criminal, Claiming That She has been on the Run From The Law.**

22. On April 26, 2019, Defendant, TRD published an article in print and on its online

site entitled:
   *"Terra founder Pedro Martin's former mistress files defamation suit; latest in ongoing feud." Martin won a temporary restraining order against Johanna Vibe Ener in 2017; his lawyers called her suit a 'malicious attempt to extort and embarrass" him.*

23.     The article wrongly portrays Vibe Ener, making her out to be an immoral and unchaste woman who has been convicted of multiple indictable offenses and is currently on the run from the law. **(A true and correct copy of the Article is attached as Exhibit A, and viewable at https://trd.media/fla/mFBxU)** .

24.     The article is false, misleading, and distorts the reality of Vibe Ener's circumstance and her and her family's private life.

25.     The defamatory claims published by TRD include the following:

a)     *"Pedro Martin's **former mistress**";*

b)     *"The **former mistress** of Terra chairman and founder Pedro Martin";*

c)     *"**Ener and Martin had two children together**";*

d)     *"Ener claims Martin made "deceitful, scandalous and highly offensive statements" to media outlets when he sought and won the temporary restraining order against her in 2017";*

e)     *"**Ener did not respond to emails and a phone message seeking comment**";*

f)     *"**Ener accuses Martin of reneging on several agreements** to take care of her, her son and the two children they had together, including a $60 million trust fund and a $3 million insurance policy for each child.";*

g)     *"He alleged **Ener was attempting to extort him** and provided text messages from her threatening him if he didn't pay. In 2013, Ener tried to get a temporary restraining order against Martin's wife, but the judge found no cause.";*

h)     *"That October, then-Judge Ariana Fajardo Orshan — now the U.S. Attorney for South Florida — issued an order giving local law enforcement agencies the authority to seek an arrest warrant for Ener and return her to Miami.";*

*"**After nearly two years in hiding, Vibe Ener has suddenly emerged to** file what purports to be a civil complaint against Mr. Martin and a number of unnamed and unidentifiable so-called 'coconspirators, according to Martin's dismissal motion".;*

i)     *"Under the guise of a defamation claim, **Ener attempts not only to***

*rewrite history* but also to re-write the very court orders that she has been violating for the past two years";

j)   ***Ener's 96-page complaint** is a brazen attempt to use the media as a platform to spread falsehoods and **inflict pain on his client and his family for financial gain;***

k)   "Pedro Martin is the victim of **extortion** masqueraded as a lawsuit brought by Ms. Vibe Ener," Duckenfield said.

l)   "She has **evaded justice** in the United States, flagrantly **violated the law** on several occasions, **is currently a fugitive from justice** for her failure to appear before a judge in a pending case and has subsequently fled the country.";

m)   ***The on-and-off-again couple permanently split up three years ago*** when Martin petitioned Miami-Dade Circuit Court for the restraining order against the Finland born model. The two met in New York in 2009.;

n)   ***Ener was attempting to extort him*** and provided text messages from her threatening him if he didn't pay. In 2013, Ener tried to get a temporary restraining order against Martin's wife, but the judge found no cause.

(Emphasis added.)

26.   In addition, TRD's unauthorized use of Ms. Vibe Ener's photograph, smeared across the headline is in violation of Fla. Stat. Ann. § 540.08(1) and an intrusion of Ms. Vibe Ener's privacy rights.

27.   TRD's Article contains a number of false and defamatory statements about Plaintiff.

28.   Plaintiff was **not** Martin's former mistress. Ms. Vibe Ener and Mr. Martin were engaged to be married and had a spiritual wedding ceremony. They had two children together and were sharing a home and raising their two young children together.

29.   Plaintiff **never** received emails or phone messages from TRD seeking comment.

30.   Plaintiff and Martin were **not** an on-and-off again couple who permanently split up three years ago when Martin petitioned for a restraining order.

31.   Plaintiff did **not** attempt to extort Martin and did not text threatening messages to Martin.

32.   Plaintiff was **not** in hiding for two years, suddenly emerging to file a civil complaint.

33.   Plaintiff did **not** under the guise of a defamation claim, attempt not only to rewrite history but also re-write the very court orders.

34.   Plaintiff's 96-page complaint is **not** a "brazen attempt to use the media as a platform to spread falsehoods and inflict pain on his client and his family for financial gain.

35.   Pedro Martin is **not** the victim of extortion masqueraded as a lawsuit brought by Plaintiff.

36.   Plaintiff has **not** evaded justice in the United States, flagrantly violating the law on several occasions and is currently a fugitive from justice.

37.   Plaintiff was **not** attempting to extort Martin, **nor** has she ever been charged or convicted of extortion.

38.   TRD's purpose in publishing these defamatory statements was to harm Vibe Ener's good name and reputation and to gain additional customers and increase traffic to its on-line site.

39.   TRD had no basis to make these false and highly defamatory and damaging statements about Vibe Ener.

40.   TRD's lies did in fact, harm Plaintiff's reputation by misleading others about her character and impugning her reputation in that she was a "mistress" who committed crimes against Martin, fled the United States to evade authorities for various criminal acts and remains a criminal fugitive.

41.   TRD's false and defamatory statements constitute libel per se, as they assert that Vibe Ener committed indictable criminal offenses involving moral turpitude or infamous punishment, and tend to injure Vibe Ener in her personal and business relationships .

C.  **Failure By The TRD To Fact Check**

42.     TRD failed to fulfill their legal and ethical responsibilities before publishing an article of this nature and especially an article singling out a private citizen by name for defamation, and to not "fact check" and review the evidence for defamatory factual recitations made before publication.

43.     The TRD publication caused Vibe Ener to be inundated with numerous telephone calls by various sundry persons seeking to alternately console, chastise, proposition, or berate her, and for which she has suffered severe mental pain and anguish.

44.     The TRD publication was an absolutely unwarranted invasion of Vibe Ener's privacy and right to be free from unwarranted publicity, and to be protected from a wrongful and unlawful intrusion into her life, which, altogether, has outraged her and caused her severe mental suffering, shame, and humiliation.

45.     The article as a whole, was published without Vibe Ener's knowledge, authority, or consent, and in complete and utter disregard of its obviously harmful effects on Vibe Ener and her minor children and family.

46.     Notwithstanding the lack of any reliable factual support for its claims, and without requesting comment from Vibe Ener, TRD willfully published the defamatory statements and other private information regarding the Plaintiff to the public and refrained from attempting to interview or solicit a statement from Ms. Vibe Ener.

47.     On information and belief, these defamatory statements include, inter alia allegations that Vibe Ener acted maliciously, committed criminally indictable acts and continues to evade justice.

48.     At the time of the publication, TRD was either aware that the statements about Ms. Vibe Ener were false, or harbored serious doubts about the truth of the claims, especially in

light of the fact that Vibe Ener had written to TRD in the past demanding a retraction for other false and defamatory statements made by TRD in previous articles published in 2017.

49.     TRD's April 26, 2019 publication reached thousands of readers, and also foreseeably caused a chain reaction in other news outlets, websites, blogs social media, and American, Spanish and Latin American television news, as well as a reaching even more readers throughout the world.

50.     The chain reaction even reached Finland and the town where Vibe Ener was born and raised. Based on TRD's article, the most prominent Finish media outlet featured several articles about Vibe Ener focusing on the TRD's defamatory publication.

51.     Based on TRD's publication, the Finish articles wrongly reported Vibe Ener in a false light describing her as a criminal mistress who extorted her American lover for millions and remains a fugitive in the United States.

52.     Vibe Ener served Defendants with a pre-suit notice pursuant to Section 770.01 Fl. Stat. on January 31, 2020 and February 3, 2020,  demanding a retraction of the April 26, 2019 publication and noticing suit.  TRD ignored Vibe Ener's notice.

54.     When contacted by Vibe Ener and her representatives to comment on the article, TRD refused to meet with or accept comment by Ms. Vibe Ener or her representatives, but relied on comments made by Duckenfield and Martin's unnamed lawyers.

55.     Defendants entertained conscious doubts that the defamatory statements in the Article were true, but still published them anyway.

56.     TRD's conduct violated professional standards of journalism ethics as exemplified by the Society of Professional Journalists ("SPJ") Code of Ethics1. The SPJ Code of Ethics provides, in pertinent part:

a.     "An ethical journalist acts with integrity."

b.     "Ethical journalism should be accurate and fail."

c.     "Journalists   should   be   honest…in   gathering,   reporting   and   interpreting information."

d.     "Journalists should…verify information before releasing it."

e.     'Journalists should…use original sources whenever possible."

f.     "Ethical journalism treats…subjects…as human beings deserving of respect."

g.     "Journalists should…Balance the publics' need for information against potential harm or discomfort."

h.     "Journalists should…Show compassion for those who may be affected by news coverage."

i.     "Journalists should… Avoid pandering to lurid curiosity."

j.     "Journalists should…Consider the long-term implications of the extended reach and permanence of publication."

k.     "Journalists should…Abide by the same high standards they expect of others."

57.     In publishing the defamatory statements about Vibe Ener, TRD failed to live up to any of these important ethical principles of journalism.

58.     Defendants knew and intended that its defamatory statements about Vibe Ener would be viewed by thousands of readers, and also would be republished by other news outlets and websites, both because of the salacious claims made in the Articles, and also because such republication is part of Defendants' conscious business strategy. Not only do stories appear on TRD's

website and on-line newspaper , the stories are then followed up by media outlets across the US and world who source TRD's reporting and then use it as the basis for their own reporting.

59.     This is precisely what happened in the instant case: Defendants' defamatory statements about Plaintiff were re-published by numerous outlets, which resulted in thousands of people throughout the world reading the aforementioned defamatory statements about Vibe Ener.

60.     As a proximate result of the above described defamatory statements, Vibe Ener has suffered and continues to suffer irreparable harm and damages which include physical pain and suffering, mental anguish and distress, humiliation, embarrassment, damage to reputation, loss of income and lost business opportunities for her and her minor children.

61.     Notwithstanding the lack of any reliable factual support for its claims, the substantial number of denials and the ability to interview Plaintiff and other witnesses who likewise would have denied the claims, the Defendants made the conscious decision to publish the defamatory statements. At the time of publication, the Defendants were aware that its statements about Plaintiff were false, or harbored serious doubts about the truth of the claims. Defendants on-line publication of defamatory claims reached thousands of readers, and foreseeably caused a chain- reaction of republication of the claims in other news outlets, websites, blogs and social media throughout the world including news media in Plaintiff's home country of Finland.

62.     As a direct and proximate result of the defamatory publications, Vibe Ener has suffered and continues to suffer irreparable harm to her good reputation, good will, personal and business relationships, in addition to major business opportunities that were otherwise available to her have been lost and/or substantially impacted.

63.     Defendants published defamatory statements with a reckless disregard of the truth and used slipshod and sketchy investigative techniques.

64.     Reckless disregard of the truth can be shown when there is little investigative

effort expended initially or signals of the falsehood of reporting are ignored, or no additional inquiries were made after the editors knew or should have known that the published accounts were untrue. TRD's negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of its recklessness or its knowledge of falsity of the statements.

**D.** **Defendant Duckenfield And Balsera Communications Group, Defames Vibe Ener To The Public Contributing to the Defamatory April 26, 2019 Article Published by TRD.**

65. Defendants Duckenfield and Balsera made false and defamatory statements to TRD.

66. In the April 26, 2019, TRD Article, Duckenfield is identified as the "spokesperson for Martin".

67. Duckenfield states in pertinent part:

> *"Ener's 96-page complaint is a **brazen attempt to use the media** as a platform **to spread falsehoods and inflict pain** on his client and his family for **financial gain."***

> *"Pedro Martin is the victim of **extortion** masqueraded as a lawsuit **brought by Ms. Vibe Ener,"***

> *Duckenfield said. "**She has evaded justice in the United States**, flagrantly violated the law on several occasions, **is currently a fugitive** from justice for her failure to appear before a judge in a pending case and has subsequently **fled the country."***

> *Duckenfield claims for these reasons, Martin will vigorously defend himself."*

68. Vibe Ener's complaint is **not** a "brazen attempt to use the media as a platform to spread falsehoods and inflict pain".

69. Martin is **not** the "victim of extortion masqueraded as a lawsuit brought by Vibe Ener".

70. Vibe Ener has **not** evaded the justice system in the US, flagrantly violated the law on several occasions, and is **not** currently a fugitive from justice.

71.   Vibe Ener has **not** "fled the country".

72.   Duckenfield's lies did in fact, harm Plaintiff's reputation by misleading others that she committed crimes against Martin, fled the United States to evade authorities for various criminal acts and remains a criminal fugitive.

73.   Duckenfield's false and defamatory statements constitute libel per se, as they assert that Vibe Ener committed indictable criminal offenses involving moral turpitude or infamous punishment, and tend to injure Vibe Ener in her personal and business relationships, and shed her in a false light to the community at large.

74.   Defendants' false and defamatory publications regarding Plaintiff have caused tremendous harm to Plaintiff's personal and professional reputation causing severe emotional distress, in addition to monetary damages for which Plaintiff seeks compensatory and punitive damages of at least fifty-million dollars ($50,000,000.00).

### IV.   CAUSES OF ACTION

### FIRST CAUSE
### DEFAMATION
### Liber Per Se
### (As To All Defendants)

75.   Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

76.   The Defendants together, jointly and severally, and individually, have defamed the Plaintiff by knowingly, intentionally, willfully, and negligently publishing statements about the Plaintiff which they knew or should have known to be false.

77.   Defendants' publications, as more fully set forth herein, are Defamation *Per Se* because they falsely portray Plaintiff as a criminal.

78.   The defamatory statements made by Defendants were of and concerning Plaintiff, Vibe

Ener. In fact, Defendants identified her repetitively by name, both in the article headline and throughout the article nearly (20) twenty times.

79.    The recipients and readers of the article understood the statements made in the Articles were about Vibe Ener and her private life.

80.    The defamatory statements made by Defendants in the April 26, 2019 article constitute defamation per se because they falsely portray Vibe Ener as a sexually immoral woman who has committed criminal activity amounting to a felony and remains a fugitive from justice.

81.    The defamatory statements also constitute defamation per se because they impugn Vibe Ener's fitness as a mother, a woman and the ability to perform her duties in business.

82.    Such publications were false in fact and in that they stated that Vibe Ener committed criminal actions, acted maliciously and engaged in unlawful activity including extortion, harassment, and sought to inflict pain on Martin and his family for financial gain.

83.    Such publications were false in that they asserted Vibe Ener to be an unchaste woman who has acted promiscuously as a mistress.

84.    Such publications impute that Vibe Ener possesses an unfit character and has acted promiscuously.

85.    Defendants knew and/or harbored serious uncertainty that such statements made by it were false.

86.    TRD and Balsera knew and/or harbored serious uncertainty when such defamatory statements were disseminated by Duckenfield in his attempts to represent his client.

87.    Defendants published such comments and made public in TRD's newpapers article published on April 26, 2019 and posted on its o-nline site, which still remains online at https://trd.media/fla/mFBxU.

88.    Defendants intentionally intruded upon Vibe Ener's solitude, seclusion and private affairs and concerns. Defendants' intrusion would be highly offensive to a reasonable person and was

unwarranted and unjustified.

89.    Defendants, together and each of them acting in concert, jointly and severally, and individually, knew that their public statements about the Plaintiff would cause severe damage to the reputation, business opportunities, personal and social relationships, and the career of the Vibe Ener.

90.    The publication was an absolutely unwarranted invasion of Vibe Ener's privacy and right to be free from unwarranted publicity, and to be protected from a wrongful and unlawful intrusion into her life, which, altogether, has outraged her and caused her severe mental suffering, shame, and humiliation.

91.    This defamatory and unwarranted publication has caused serious and permanent mental, emotional and physical injury to Vibe Ener, as well as an exaggeration of a preexisting physical illness, all of which have occasioned and will occasion medical expenses, and all of which have caused Vibe Ener to be ridiculed and regarded with contempt by her family, friends. acquaintances, and in her business relations.

92.    This defamatory and unwarranted publication has also outraged, shamed, and humiliated Vibe Ener, prevented her from returning to Miami, carrying on in her profession, prevented her from receiving present and future earnings, and caused her severe mental anguish. Vibe Ener's reputation has been damaged as a result of Defendants' defamatory publications. Vibe Ener is entitled to compensatory and punitive damages in an amount to be ascertained at trial.

**SECOND CAUSE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(As To All Defendants)**

93.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

94.    Defendants knowingly and intentionally published the harmful statements against Vibe Ener which has foreseeably and proximately caused the Plaintiff emotional distress.

95.     Defendants' negligent and intentional acts were committed with the knowledge that they would cause extreme physical pain and suffering and cause severe emotional distress to the Plaintiff.

96.     The Defendants' actions were done negligently, willfully, intentionally, maliciously, outrageously, and with disregard for Vibe Ener's rights and the impact on her, her family and minor children.

97.     The defamatory statements made by Defendants in the April 26, 2019 publication have caused Plaintiff damages, including that to her reputation, her business interests and prospective opportunities, as well as causing significant humiliation in the community and emotional distress.

98.     Defendants' actions were extreme and outrageous beyond all bounds of decency so as to be deemed utterly intolerable in a civilized community and Defendants intentionally or recklessly caused Vibe Ener to suffer severe emotional distress. The recitation of the Defendants' actions will arouse resentment in an average member of the community and cause her to exclaim "outrageous." These acts continue to terrorize Vibe Ener, her minor children and her family.

99.     Defendants intended to cause Vibe Ener to suffer emotional distress, or, in the alternative, engaged in the conduct with reckless disregard of the high probability of causing Vibe Ener and her minor children and family members to suffer emotional distress.

100.    Defendants' conduct was knowing, malicious, willful, and wonton, entitling Plaintiff to an award of punitive damages.

101.    As a direct and proximate result of Defendants' Defamation, as set forth herein, Vibe Ener has been injured and has sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment be entered in her favor as follows:

(1)     Compensatory damages including consequential and incidental damages as a result of The Defendant's wrongdoing in an amount of  $50,000,000.00;

(2)  An order requiring The Real Deal to make a public retraction of the false statements;

(3)  An order requiring David A. Duckenfield, and Balsera Communications Group to make a public retraction of the false statements;

(4)  An Order enjoining The Real Deal, David A. Duckenfield, and Balsera Communications Group from publishing or republishing the defamatory statements ; and from making further defamatory remarks;

(5)  For punitive and exemplary damages;

(6)  For reasonable attorney's fees and or costs of litigating this matter;

(7)  For any other and further relief as this Court may deem appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims.


Dated: February 13, 2020       Respectfully submitted,


JOHANNA MARIA VIBE ENER,
PLAINTIFF IN PRO SE
61 Bridge Street, Kington
Herefordshire, JR5 3DJ (UK)
victorvictoria888@protonmail.com
phone +44 7937 268245

# EXHIBIT A

**THE REAL DEAL**
SOUTH FLORIDA REAL ESTATE NEWS

**THE REAL DEAL**
NEW YORK CITY REAL ESTATE NEWS

Subscribe    Log In

# Terra founder Pedro Martin's former mistress files defamation suit; latest in ongoing feud

*Martin won a temporary restraining order against Johanna Vibe Ener in 2017; his lawyers called her suit a "malicious attempt to extort and embarrass" him*

By Francisco Alvarado | Research by Haru Coryne

f 🐦 in ✉ ⤴

April 26, 2019 06:15PM



*Johanna Vibe Ener and Pedro Martin*

The former mistress of Terra chairman and founder Pedro Martin is suing him for defamation in an ongoing feud that two years ago saw Martin secure a temporary restraining order against her.

Johanna Vibe Ener filed the suit on Tuesday from England — where she now lives after fleeing Miami three years ago — and is representing herself. She accuses the Miami developer of orchestrating an "elaborate concerted campaign to publicly defame and ruin" her. Ener said Martin did so in "a last-ditch effort to save his personal life, his marriage and business reputation." Ener and Martin had two children together.

Ener claims Martin made "deceitful, scandalous and highly offensive statements" to media outlets when he sought and won the temporary restraining order against her in 2017. Ener did not respond to emails and a phone message seeking comment. She is seeking $200 million in damages, claiming that he owes her millions from a promised trust fund for their children and insurance policies.

David Duckenfield, a spokesperson for Martin, said Ener's 96-page complaint is a brazen attempt to use the media as a platform to spread falsehoods and inflict pain on his client and his family for financial

gain.

"Pedro Martin is the victim of extortion masqueraded as a lawsuit brought by Ms. Vibe Ener," Duckenfield said. "She has evaded justice in the United States, flagrantly violated the law on several occasions, is currently a fugitive from justice for her failure to appear before a judge in a pending case and has subsequently fled the country."

Duckenfield said Martin will vigorously defend himself. A Terra spokesperson said Ener's lawsuit has nothing to do with the company or its chief executive, David Martin, Pedro's eldest son. He declined further comment.

In a 74-page motion to dismiss filed Friday, Martin's lawyers claim her complaint is "a vitriolic, malicious attempt to extort and embarrass the defendant from afar by regurgitating the same false allegations that have been repeatedly rejected by the family court."

The on-and-off-again couple permanently split up three years ago when Martin petitioned Miami-Dade Circuit Court for the restraining order against the Finland born model. The two met in New York in 2009.

He alleged Ener was attempting to extort him and provided text messages from her threatening him if he didn't pay. In 2013, Ener tried to get a temporary restraining order against Martin's wife, but the judge found no cause.

Among the charges in Ener's lawsuit are claims that she was forced to leave her home in Miami because of death threats against her, her mother and her children. She also said that Martin and his attorneys filed bogus criminal complaints against her and fed false information to media outlets that Ener was an exotic dancer.

According to the suit, she also claims Martin gave her a $100,000 engagement ring, and that they had a "spiritual wedding ceremony." Ener accuses Martin of reneging on several agreements to take care of her, her son and the two children they had together, including a $60 million trust fund and a $3 million insurance policy for each child. Ener attached copies of the agreements bearing Martin's signature with her lawsuit.

As part of Martin's motion to dismiss, his lawyers included copies of judicial rulings in the restraining order case that found her in contempt of court for fleeing the U.S. to Europe with her three children in the summer of 2017. That October, then-Judge Ariana Fajardo Orshan — now the U.S. Attorney for South Florida — issued an order giving local law enforcement agencies the authority to seek an arrest warrant for Ener and return her to Miami.

The restraining order against Ener has since expired and Martin's case was dismissed last year.

"After nearly two years in hiding, Vibe Ener has suddenly emerged to file what purports to be a civil complaint against Mr. Martin and a number of unnamed and unidentifiable so-called 'co-conspirators,'"

according to Martin's dismissal motion. "Under the guise of a defamation claim, Ener attempts not only to rewrite history but also to re-write the very court orders that she has been violating for the past two years."

**Extremely Urgent**

Call **1-800-PICK-UPS®** (1-800-742-5877) or visit UPS.com®.

**Small Box**

(13" x 11" x 2")

International Shipping Notice— Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention on the Contract for the International Carriage of Goods by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

This box is for use with the following services:

**UPS Next Day Air®**
**UPS Worldwide Express®**
**UPS 2nd Day Air®**
**UPS Worldwide Expedited®**
**UPS Ground**
**UPS Standard**
**UPS 3 Day Select®**

Apply shipping documents here.

BILLING: P/P

**UPS NEXT DAY AIR**

TRACKING #: 1Z T50 MM7 01 0001 4210

**1**

**NY 111 9-50**

BROOKLYN NY 11201-1804
225 CADMAN PLAZA EAST
US DISTRICT COURT, EASTERN DIV.
CLERKS OFFICE - FILING DESK
SHIP TO:

2 LBS                1 OF 1

DWT: 18.13.3

Visit ups.com for details on our privacy practices.

01001510023   04/10   IP   United Parcel Service, Louisville, KY

50% Post-Consumer Content